UNITED STATES of America,
Plaintiff,

v.

Malcolm WILLIAMSON, doing business as L & M Trading Company, International Meat & Food Products, Inc., a corporation, and Intercontinental Meat Traders, Inc., a corporation, Defendants.

Crim. No. 64–L–123.

United States District Court
S. D. Texas,
Laredo Division.

Oct. 19, 1964.

---

Woodrow Seals, U. S. Atty., and Thomas L. Morrill, Asst. U. S. Atty., Houston, Tex., for plaintiff.

W. C. Wright, Laredo, Tex., for defendant Malcolm Williamson.

McDonald, Sanders, Nichols, Wynn & Ginsburg (Stanford Harrell), Fort Worth, Tex., for defendant International Meat & Food Products, Inc.

Hall, Hall & Juarez (Horace C. Hall, III), Laredo, Tex., for defendant Intercontinental Meat Traders, Inc.

CONNALLY, Chief Judge.

The defendant Williamson is charged in a twenty-four count Criminal Information with engaging in the for-hire transportation business by motor vehicle in interstate commerce without first obtaining a certificate or permit of authority from the Interstate Commerce Commission as required by § 303(c) of Title 49 U.S.C.A. Each of the remaining defendants (International and Intercontinental) is charged in twelve counts with aiding and abetting Williamson in said offense, allegedly in violation of § 2 of Title 18 U.S.C.A. Williamson and International have entered pleas of guilty

to various counts of the Information. Intercontinental has filed a Motion to Dismiss contending that as a shipper it may not be held guilty as an aider and abettor of the carrier, under § 303(c).

On the coming on of said motion, the Court expressed the view that the broad proposition thus asserted might not be maintained, and that a shipper (or any other person) on proper showing, might well be guilty of aiding, counseling or inducing a carrier to enter into such illegal transportation, and that thus such person might be held under § 2 of Title 18. Counsel were advised that it would be necessary to hear the evidence in the case. Counsel suggested, however, that the evidence was not in dispute, and might be stipulated. Such a stipulation of fact has been filed, and it is agreed that the Motion to Dismiss may be considered as a Motion to Dismiss at the conclusion of the Government case.

Such stipulation reflects substantially the following. Defendant Williamson owned a number of refrigerated trucks which were used to carry food products in interstate commerce between Laredo, Texas and various other points. Intercontinental engaged in the purchase and sale of meat and meat by-products throughout the United States, and employed carriers to transport its meat in interstate commerce. Williamson approached Intercontinental offering to transport its meat in interstate commerce, although he had no authority from the Interstate Commerce Commission for such carriage. With knowledge that Williamson had no such authority, nevertheless Intercontinental employed Williamson to carry certain of its products in interstate commerce, being motivated, apparently, by a want of certificated carriers serving this area. The relationship of these parties was solely that of shipper-carrier, and Intercontinental had no interest or control over Williamson's trucks, nor did it induce or encourage Williamson to ship goods in interstate commerce without authority, unless this patronage of his illegal activity constituted such inducement.

Furthermore, there is no evidence that the charges for such transportation paid by Intercontinental were other than the usual and normal tariffs charged for like transportation by duly authorized carriers. No rebates, concessions, or "kickbacks" were involved.

§ 303(c) of Title 49 provides, in pertinent part, as follows:

" * * * [N]o person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, * * * unless there is in force with regard to such person a certificate or a permit issued by the Commission authorizing such transportation * * *."

It will be noted that the section condemns only the conduct of a carrier.

█ Prohibited conduct by a shipper (or other person) of a related nature is defined in § 322(c) of Title 49. An examination of this section reflects that to constitute a violation by a shipper (who knowingly patronizes an uncertificated carrier), it is necessary that he either: (a) receive some character of rebate or concession, or (b) be guilty of some fraudulent conduct in an attempt to evade the regulations (as by the use of false bills of lading, receipts, bills of sale, etc.). Read together, as they must be as a part of the same chapter of this regulatory act, these sections indicate a congressional intent only to condemn the act of a shipper where the elements set out in § 322(c) are present. Unable to charge the shipper under § 322(c) because of the absence of either rebate or fraud, the Government seeks to circumvent this requirement by charging him as an aider or abettor of the carrier under § 2 of Title 18. If it were the congressional intent to punish the shipper for participation in the same conduct as the carrier, it seems that such provision would have been found in § 303(c).

█ One of the purposes of the regulation of motor carriers in interstate commerce is the protection of shippers from abuses by the carriers. In the

shipper-carrier relation, it is the former which is the protected class. Where, as here, a violation of law (of § 303(c) by a carrier) necessarily contemplates joint action by two parties (namely, the shipper, whose goods are carried, and the carrier, whose motor vehicles carry them), a knowing participation by the victim, or member of the protected class, without more, does not constitute such person an aider or abettor.

An analagous situation is presented in the interpretation of § 2421 of Title 18 U.S.C.A. (the Mann Act) whereby the transportation of a female in interstate commerce for immoral purposes is made criminal. The person so transporting such female is guilty of a violation, even though the female consents to the forbidden transportation. However, she may not be prosecuted as an aider and abettor, if consent constitutes her only participation. (Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370). In reaching this result, the Court stated (at page 119, 53 S.Ct. at page 36):

"For the woman to fall within the ban of the statute she must, at the least, 'aid or assist' some one else in transporting or in procuring transportation for herself. But such aid and assistance must * * be more active than mere agreement on her part to the transportation and its immoral purpose. * * * In applying this criminal statute we cannot infer that the mere acquiescence of the woman transported was intended to be condemned by the general language punishing those who aid and assist the transporter, any more than it has been inferred that the purchaser of liquor was to be regarded as an abettor of the illegal sale. State v. Teahan, 50 Conn. 92; Lott v. United States., (C.C.A.) [9 Cir.] 205 F. 28, 46 L.R.A.(N.S.) 409; cf. United States v. Farrar, 281 U.S. 624, 634, [50 S.Ct. 425, 74 L.Ed. 1078, 68 A.L.R. 892]. The penalties of the statute are too clearly directed against the acts of the transporter as distinguished from the consent of the subject of the transportation."

And, further, (at page 123, 53 S.Ct. at page 38):

"It is not to be supposed that the consent of an unmarried person to adultery with a married person, where the latter alone is guilty of the substantive offense, would render the former an abettor or a conspirator, compare In re Cooper, 162 Cal. 81, 85; 121 P. 318, or that the acquiescence of a woman under the age of consent would make her a co-conspirator with the man to commit statutory rape upon herself. Compare Queen v. Tyrrell, [1894] 1 Q.B. 710. The principle, determinative of this case, is the same."

The Government relies primarily upon May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994 (1949). In that case the Court rejected the argument advanced by the shipper here, although the statutes involved—and the circumstances —were quite different. In doing so, the Court made the following observation:

"As we have stated, the former makes criminal offenses of both the payment and the receipt of bribes, whereas the latter makes only the receipt of compensation an offense. There is some force in appellant's argument (that payment of a bribe did not constitute one an aider and abettor under the statute forbidding acceptance of a bribe), and if the two sections had been adjoining sections in the same original congressional enactment, there would have been great force in it."

Sections 303(c) and 322(c) are part of the same statute and clearly form a part of the same congressional pattern. Under such circumstances, as observed by the Court, there is much force to the argument. May v. United States is distinguishable.

■ Concluding, it should be made clear that the foregoing should not be construed as a holding that a shipper, or

other person, may not conspire with a carrier to violate § 303(c); or that a shipper, or other person, may not be guilty as an aider or abettor if, in fact, he "aids, abets, counsels, commands, induces or procures" the violation. The holding simply is that the knowing shipment of his goods by a shipper, and the payment of the proper tariff, does not constitute such shipper an aider or abettor. Such conduct merely makes it possible for the carrier to violate the law.

The motion to dismiss is granted.