**UNITED STATES of America,
Plaintiff,**

v.

**MONT STAHLMAN LUMBER, INC.,
Defendant.**

**Civ. A. No. 72-265.**

United States District Court,
W. D. Pennsylvania.

Aug. 24, 1973.

Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant.

## OPINION

SCALERA, District Judge.

On August 16, 1966, acting as a partner in Mont Stahlman Lumber Company (a partnership located in Brookville, Jefferson County, Pennsylvania), and as the vice president of Westover Lumber Corporation, Sherwood R. Hilton signed an "Application for Motor Carrier Certificate or Permit" in behalf of carrier H. L. Knepshield. This application sought ICC authorization to make lumber shipments from points in Jefferson and Clarion Counties, Pennsylvania, to various destinations in Maryland, Indiana, New York and Wisconsin. During the period beginning October 1, 1967 and ending February 27, 1968, defendant, Mont Stahlman Lumber, Inc. (a cor-

poration located in Derry Township, Westmoreland County, Pennsylvania) engaged H. L. Knepshield to carry 13 shipments from Gray Station, Westmoreland County, Pennsylvania, to various destinations not covered by the ICC authorization application filed on August 16, 1966, or any other ICC authorization. Prior to and during this period, Sherwood R. Hilton also served as an officer of Mont Stahlman Lumber, Inc.

On April 6, 1972, the government filed a civil complaint alleging that Mont Stahlman had aided and abetted H. L. Knepshield in the latter's efforts to carry lumber from Gray Station, Pennsylvania, to various destinations without first obtaining the required ICC authorization for those routes.

The government is pursuing these charges on the following theory: Acting for Mont Stahlman Lumber Company, Sherwood Hilton signed H. L. Knepshield's request for ICC authorization to ship lumber from points in Jefferson and Clarion Counties. At that point Hilton knew or should have known that Knepshield did not have authority to ship lumber from points in Westmoreland County. Thus, when Hilton became an officer in Mont Stahlman Lumber, Inc., he brought that knowledge with him. Given that knowledge, the corporation's employment of Knepshield for unauthorized runs is equivalent to aiding and abetting him in using unauthorized routes.[1]

The matter is presently before us on defendant's motion for summary judgment. In that motion the defendant argues that:

1. Given the government's responses to interrogatories filed by the defendant, the government cannot adduce proofs legally sufficient to sustain the conclusion that Mont Stahlman aided and abetted Knepshield in his violations

---

1. The government also theorizes that Mont Stahlman Lumber, Inc. need not have actual or constructively imputed knowledge of Knepshield's lack of authorization in order to aid and abet him in his use of unauthorized routes. We reject this theory on the weight of the myriad of cases which indicate that an aider and abettor under 18 U.S.C.A. § 2 must act "knowingly and wilfully" to further the unlawful endeavor.

of 49 U.S.C.A. §§ 303(c), 306(a)(1) and 309(a)(1).

2. Given the government's responses to interrogatories filed by the defendant, the government cannot adduce evidence which indicates that Mont Stahlman knew that Knepshield did not have authorization to make shipments from Gray Station, Pennsylvania, and if Mont Stahlman Lumber, Inc. lacked such knowledge, it cannot be an aider and abettor within the meaning of 18 U.S.C.A. § 2.

We dispose of this motion on the basis of the defendant's first argument, and therefore we do not discuss the second, although it also appears to have merit.

## DECISION

In the instant action, the government seeks to recover civil forfeitures from Mont Stahlman pursuant to § 222(h) of the Interstate Commerce Act (49 U.S.C.A. § 322(h)). That section in relevant part provides:

> Any motor carrier, broker, or lessor, or other person, or any officer, agent, employee, or representative thereof, . . . who shall fail or refuse to comply with the provisions of § 303(c) or § 306(a)(1) or § 309(a)(1) of this title shall forfeit to the United States not to exceed $500.00 for each such offense. . . . All forfeitures provided for in this section . . . shall be recoverable in a civil suit in the name of the United States . . . .

Sections 303(c), 306(a)(1) and 309(a)(1) prohibit the transportation of goods in interstate or foreign commerce by anyone engaging in the for-hire motor vehicle transportation business unless the ICC has issued a certificate or permit authorizing such transportation.

These sections in relevant part provide:

Section 303(c):

> [N]o person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign, . . . unless there is in force with respect to such person a certificate or

a permit issued by the Commission authorizing such transportation.

. . .

Section 306(a)(1):

> [N]o common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway, . . . unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations. . . .

Section 309(a)(1):

> [N]o person shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway . . . unless there is in force with respect to such carrier a permit issued by the Commission authorizing such person to engage in such business.

. . .

Thus, under § 322(h), any person who fails to apply for a certificate of public convenience or for a permit from the ICC before engaging in any for-hire transportation business by motor vehicle is subject to a forfeiture of up to $500.00 which may be collected by a civil action.

In the present case, Mont Stahlman did not engage in the for-hire transportation business by motor vehicle. Instead, the defendant engaged Mr. Knepshield to transport its logs from Gray Station, Pennsylvania. Moreover, as Mont Stahlman has not engaged in any for-hire transportation business by motor carrier and is neither a common carrier nor a contract carrier by motor vehicle, in its own right it could not possibly have violated §§ 303(c), 306(a)(1) or 309(a)(1) by failing to obtain a certificate or permit from the ICC.

The government, however, has charged that Mont Stahlman aided and abetted (18 U.S.C.A. § 2) violations of §§ 303(c), 306(a)(1) and 309(a)(1), which were carried out by carrier H. L. Knepshield. Under this court's understanding of the law, a shipper may aid and abet a carrier in violating §§

303(c), 306(a)(1) and 309(a)(1), but the shipper must do more than merely hire the carrier despite knowledge that the carrier does not have proper authorization from the ICC. See United States v. Williamson, 235 F.Supp. 836 (S.D. Texas 1964). [The court reasoned, by analogy from Mann Act situations, that a shipper cannot aid and abet violations of regulations expressly applicable to carriers that were passed to protect shippers from overcharges, unless the shipper obtains illegal rebates, reduced tariff charges, or some other type of financial gain.] In *Williamson*, the court said:

> Concluding, it should be made clear that the foregoing should not be construed as a holding that a shipper, or other person, may not conspire with a carrier to violate § 303(c); or that a shipper, or other person, may not be guilty as an aider or abettor if, in fact, he "aids, abets, counsels, commands, induces or procures" the violation. The holding simply is that the knowing shipment of his goods by a shipper, and the payment of the proper tariff, does not constitute such shipper an aider or abettor. Such conduct merely makes it possible for the carrier to violate the law.

The government's responses to some of the interrogatories filed on October 19, 1972 (the answers are binding for the purposes of trial) indicate that the government's proofs cannot satisfy the minimal *prima facie* case standards advocated in *Williamson*, supra. In interrogatory number 1, defendant asked the government to:

> State the facts upon which you intend to rely to establish that on or about October 1, 1967 Mont Stahlman Lumber, Inc., the defendant, knowingly and wilfully aided and abetted H.

L. Knepshield to engage in an interstate operation on public highways as a for-hire carrier by motor vehicle in connection with the transportation by Mr. Knepshield of a prepaid shipment of lumber from Gray Station, Pennsylvania, to Holland, New York, for compensation in the amount of $164.-40 without there being in force with respect to H. L. Knepshield a certificate of public convenience and necessity or a permit issued by the Interstate Commerce Commission authorizing such interstate operations.

In response the government indicated that:

> The United States of America intends to rely upon the fact that Mont Stahlman Lumber, Inc., defendant, requested H. L. Knepshield to provide a transportation service from the origin of Gray Station (Westmoreland County), Pennsylvania, although defendant knew said Gray Station to be outside H. L. Knepshield's authorized origin area of Jefferson and Clarion Counties, Pennsylvania. Responses to Nos. 4, 7, 10, 13, 16, 19, 22, 25, 28, 31, 34, and 37, below, are to the same effect.

(The answer indicates that the government's proofs on the issue will be the same on each of the 13 counts charged against the defendant.)

■ This response indicates that the government hopes to prove nothing more than a mere knowing use of an unauthorized carrier. *Williamson*, supra, does not regard a mere knowing use as sufficient grounds for recovery of civil penalties. Applying the teaching of *Williamson*, supra, as we feel we must, to the present fact situation, we are moved to grant defendant's request for summary judgment.[2]

An appropriate order will be entered

---

2. The complaint makes specific reference to 49 U.S.C.A. § 42 (Elkins Act) but § 42 was intended only as a procedural device which would permit joinder of all parties affected by the regulation or regulatory practice under judicial consideration. Therefore,

§ 42 should not be read to permit punishment of a party that could not otherwise be punished under the substantive provisions of 49 U.S.C.A. § 322(h), 303(c), 306 (a)(1) or 309(a)(1).