**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony M. FALLETTA,
Defendant-Appellant.**

**No. 75–1171.**

United States Court of Appeals,
Fifth Circuit.

Nov. 28, 1975.
Rehearing and Rehearing En Banc
Denied Dec. 24, 1975.

James M. Fullan, Jr., Roderick Beddow, Jr., Birmingham, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., J. Stephen Salter, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant Falletta was convicted on a charge of aiding and abetting, 18 U.S.C. § 2(a), Joseph Robert Schillaci in a violation of the offense created by 18 U.S.C. App. § 1202(a),[1] which proscribes receipt,

---

1.  18 U.S.C.App. § 1202(a).
    "Any person who—
    (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
    (2) has been discharged from the Armed Forces under dishonorable conditions, or
    (3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or
    (4) having been a citizen of the United States has renounced his citizenship, or
    (5) being an alien is illegally or unlawfully in the United States,
    and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm

possession and transportation of a firearm in interstate commerce by a convicted felon. By a bill of particulars the government elected to prosecute on the theory that Falletta had aided and abetted Schillaci in the "receipt" of the firearm. We affirm.

Falletta contends that the indictment was defective because one who furnishes a firearm to a convicted felon cannot be prosecuted for aiding and abetting a violation of § 1202(a). Looking first at the text of the statute, Falletta says that when Congress created the offense of "receiving" a firearm it must surely have contemplated that there is a "giver" whenever there is a "receiver".[2] Thus, the argument continues, Congress' failure to impose liability on the transferor indicates a legislative desire that such a person should go unpunished.[3]

There is respectable authority supporting this approach to statutory construction. The leading case is *Gebardi v. U. S.*, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932). *Gebardi* concerned an analogous problem under the Mann Act, which creates the offense of transporting a woman across a state line for immoral purposes. The question was whether a woman's consent to be so transported made her liable for conspiring to violate the Act. The Supreme Court reversed her conviction on the ground that

> we perceive in the failure of the Mann Act to condemn the woman's participation in those transportations which are effected with her mere consent, evidence of an affirmative legislative policy to leave her acquiescence unpunished. We think it a necessary im-

plication of that policy that when the Mann Act and the conspiracy statute came to be construed together, as they necessarily would be, the same participation which the former contemplates as an inseparable incident of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically to be made punishable under the latter.

287 U.S. at 123, 53 S.Ct. at 38, 77 L.Ed. at 211–12.

The lower courts have adopted the *Gebardi* reasoning in other contexts. Thus, it has been held that, under a statute that prohibits an attorney from handling a case on which he had previously worked as a government employee, a client cannot be prosecuted as a conspirator for bringing his attorney such a case, *U. S. v. Nasser*, 476 F.2d 1111 (C.A.7, 1973); that a purchaser of narcotics cannot be prosecuted for conspiring to violate the federal statute prohibiting the sale of narcotics, *Nigro v. U. S.*, 117 F.2d 624 (C.A.8, 1941); that one who pays compensation to a government employee is not guilty of aiding and abetting a violation of the law prohibiting government employees from receiving compensation for services rendered, *U. S. v. Bowles*, 183 F.Supp. 237 (D.Me.1958);[4] and that a shipper's employment of an unlicensed motor carrier does not make it liable for aiding and abetting a violation of the statute requiring carriers to obtain an ICC license, *U. S. v. Williamson*, 235 F.Supp. 836 (S.D.Tex.1964). *Gebardi, Nasser,* and *Nigro* dealt with the federal conspiracy statute (18 U.S.C. § 371 and its predecessors) rather than the aiding and abetting statute. But we

---

**2.** For purposes of discussion we accept as correct the semantic point that receiving necessarily involves the participation of two persons and thus logically entails an act of aiding and abetting. Another circuit has disputed this point and has held that one can be convicted of conspiracy to violate the § 1202(a) "receiving" offense. *U. S. v. Lupino*, 480 F.2d 720 (C.A.8), *cert. denied*, 414 U.S. 924, 94 S.Ct. 257, 38 L.Ed.2d 159 (1973).

---

shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

**3.** Falletta does not go so far as to contend that no one can be held for aiding and abetting a violation of § 1202(a). *Cf. United States v. Giannoni*, 472 F.2d 136 (C.A.9), *cert. denied*, 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973).

**4.** *Contra, May v. U. S.*, 84 U.S.App.D.C. 233, 175 F.2d 994, 1004–05, *cert. denied*, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949). *See also U. S. v. Johnson*, 337 F.2d 180 (C.A.4, 1964), *cert. denied*, 385 U.S. 846, 86 S.Ct. 749, 17 L.Ed.2d 77 (1966).

doubt that any distinction can be drawn on that account, since the logic of the argument has identical force in either context.

At the same time, we do not hold that the aiding and abetting statute can never be brought into play when the legislature has prescribed criminal penalties for one party in a transaction that necessarily involves two. *Cf.* Anno., 131 A.L.R. 1322 (1941). The rule of construction announced in *Gebardi* amounts at best to a weak presumption about legislative intent. Other factors can be invoked to the contrary, and we find that contrary and overriding indications are present in this case.

■ It appears to us that Congress did not focus clearly on the "receiving" aspect of this statute and therefore did not go through the thought processes Falletta ascribes to it. The main objective of §§ 1201–03 (together comprising Title VII of the Omnibus Crime Control and Safe Streets Act of 1968) was to restrict the *possession* of firearms by certain groups of people. This is clear from the remarks made by the sponsor of the amendment that became Title VII. *See U. S. v. Bass*, 404 U.S. 336, 353–56, 92 S.Ct. 515, 525–26, 30 L.Ed.2d 488, 500–01 (1971) (Blackmun, J., dissenting). The "receiving" and "transporting" offenses occasioned little comment, probably because they largely duplicated the cover-

age of another of the Act's provisions, now 18 U.S.C. § 922(h), which in turn was essentially a re-enactment of prior law.[5]

Since possession was the real focus of attention, it is likely that Congress did not confront the issue presented in the instant case. Whatever may be said about receipt,[6] it is clear that possession is not inherently a transaction between two persons. Thus Congress' attention would not have been drawn to the liability of those cooperating in a violation of § 1202(a). Under these circumstances we cannot find, as *Gebardi* did, an "affirmative legislative policy" to create an exemption from the ordinary rules of accessorial liability.

Falletta has an argument of his own concerning the legislative history of the Omnibus Crime Control and Safe Streets Act. He insists that Titles IV and VII must be construed *in pari materia*, since the sponsor of Title VII, Senator Long, represented on the floor of the Senate that his amendment would complement Title IV. Falletta then points to the provision in Title IV, now 18 U.S.C. § 922(d), prohibiting persons licensed to deal in guns (as importers, dealers, manufacturers, or collectors) from selling or otherwise disposing of firearms to anyone in several specified classes, including convicted felons.[7] He contends that

---

**5.** *See* 15 U.S.C. § 902(f) (1961). Under this statute it was viewed as permissible to convict a person for cooperating with a convicted felon in receiving a firearm in interstate commerce. *Costello v. U. S.*, 255 F.2d 389 (C.A.8), *cert. denied* 358 U.S. 830, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958). Falletta cites no authority to the contrary.

Title VII, unlike § 922(h) and its predecessors, governs receipts that have only a minimal nexus with interstate commerce. *See U. S. v. Bass, supra*, 404 U.S. at 350 n.18, 92 S.Ct. at 524 n.18, 30 L.Ed.2d at 498 n.18. (In fact, the relaxed commerce requirement probably explains the government's decision in this case to proceed under the "receiving" language of § 1202(a).) But it strains credibility to suppose that Congress, while loosening the interstate commerce requirement in an obvious effort to make the new "possession" offense ef-

fective, considered afresh the already well-established offense of receiving a firearm and then consciously decided to shield furnishers of firearms from liability.

**6.** *See* footnote 2, *supra.*

**7.** 18 U.S.C. § 922(d):

"It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) is a fugitive from justice;

(3) is an unlawful user of or addicted to marihuana or any depressant or stimulant

§ 922(d) represents Congress' exhaustive listing of those who may be prosecuted for giving a firearm to another.

 There are at least two things wrong with this argument. First, we cannot view § 922(d) as purporting to foreclose prosecution of any transferors of firearms who are not covered therein. As earlier stated, Title IV was essentially a re-enactment of prior law. 15 U.S.C. § 902(d), the predecessor of § 922(d), had not prevented the courts from imposing ordinary accessorial liability in connection with the firearm "receipts" proscribed by other sections.[8] We can therefore rely to some extent on the common presumption that when Congress re-enacts a statute without overturning prior judicial constructions of it, the earlier interpretations should be followed. *Cf. Shapiro v. U. S.*, 335 U.S. 1, 16, 68 S.Ct. 1375, 1386, 92 L.Ed. 1787, 1798 (1948).

Second, even if we were to decide that § 922(d) precludes prosecutions for aiding and abetting receipts made illegal by Title IV, we could not extend the reasoning to Title VII. The court in *Bass*, while recognizing that the two titles are somewhat complementary, nevertheless concluded:

> [C]ircumstances surrounding the passage of Title VII make plain that Title VII was not carefully molded to complement Title IV. Title VII was a last-minute Senate amendment to the Omnibus Crime Control and Safe Streets Act. The Amendment was hastily passed, with little discussion, no hearings, and no report. The notion that it was enacted to dovetail neatly with Title IV rests perhaps on a conception of the model legislative process; but we cannot pretend that all statutes are model statutes.

404 U.S. at 343–44, 92 S.Ct. at 520–521, 30 L.Ed.2d at 494–95 (footnote omitted).

drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

 We therefore hold that the aiding and abetting statute applies with full force to one who furnishes a firearm to a person prohibited by § 1202(a) from receiving it.

Other points, concerning alleged impermissible stifling of cross-examination and alleged insufficient jury instructions on burden of proof, are lacking in merit and require no discussion.

Affirmed.

(4) has been adjudicated as a mental defective or has been committed to any mental institution. . . ."

**8.** *See* footnote 5, *supra*.