UNITED STATES of America,
Plaintiff-Appellee,

v.

Bob H. SMITH, Defendant-Appellant.

No. 77–5738.

United States Court of Appeals,
Fifth Circuit.

Nov. 22, 1978.

Rehearing Denied Jan. 4, 1979.

Willis T. Taylor, Lubbock, Tex., for defendant-appellant.

Kenneth J. Mighell, U. S. Atty., Fort Worth, Tex., Bob D. Slough, Asst. U. S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before CLARK, FAY and VANCE, Circuit Judges.

VANCE, Circuit Judge:

Bob H. Smith was indicted on June 23, 1977 on fourteen counts (Counts 25 through 38 of the indictment) for violating Title 18, United States Code, Sections 922(b)(5) and 924(a) and Section 2(b); on fourteen counts (Counts 39 through 52 of the indictment) for violating Title 18, United States Code, Section 922(m) and Section 2(b), along with one count (Count 53 of the indictment) for conspiracy to violate the same under Title 18, United States Code, Section 371.[1]

An understanding of Smith's contentions requires a familiarity with the applicable portions of the statutes under which he was indicted and convicted. The pertinent portions are set out below.[2] Pursuant to authority contained in such statutes, the Secretary of the Treasury has promulgated regulations, Title 27, Code of Federal Regulations, §§ 178.124 and 178.125(e) which are also set out below.[3]

1. Lee R. Loftis was indicted in the same indictment on twelve counts (Counts 1 through 12 of the indictment) of violating Title 18, United States Code, Sections 922(b)(5) and 924(a); on twelve counts (Counts 13 through 24 of the indictment) of violating Title 18, United States Code, Sections 922(m) and 924(a), along with one count (Count 53 of the indictment) of conspiring to violate the same under Title 18, United States Code, Section 371. The jury found Loftis guilty on all counts and he elected not to appeal.

2. Section 2(b) of Title 18, United States Code, reads in its essential part that
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. As amended Oct. 31, 1951, c. 655, § 17(b), 65 Stat. 717.
Section 371 of Title 18, United States Code, provides in its essential part that
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do an act to effect the object of the conspiracy, each shall be . . .
guilty of an offense against the United States.
Section 922(b)(5) of Title 18, United States Code, provides in its essential part that
It shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . .

(5) any firearm or ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual . . . . .
Section 922(m) of Title 18, United States Code, provides in its essential part that
It shall be unlawful for any . . . licensed dealer . . . knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.
Section 923(g) of Title 18, United States Code, provides in its essential part that
Each . . . licensed dealer . . . shall maintain such records of importation, production, shipment, receipt, sale, or other disposition, of firearms and ammunition at such place, for such period, and in such form as the Secretary may by regulations prescribe. . . .
Section 924(a) of Title 18, United States Code, provides in its essential part that
(a) Whoever violates any provision of this chapter . . .
shall be guilty of an offense against the laws of the United States.

3. Section 178.124 provides in its essential part that
(a) A . . . licensed dealer shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person, other than another licensee, . . . unless he records the transaction on a firearms transaction record, Form 4473 . . . . .
(b) A . . . licensed dealer . . . shall retain . . . as a part of his permanent records, each Form 4473 he obtains in the course of transferring custody of his firearms.
(c) Prior to making an over-the-counter transfer of a firearm . . . [the] licensed dealer . . . [in] transferring the firearm shall obtain a Form 4473 from the transferree showing the name, address, date and place of birth . . . . .
Section 178.125(e) provides in its essential part that
(e) Each licensed dealer . . . shall . . enter into a permanent record each receipt and disposition of firearms . . . .. The sale or other disposition of a firearm . . . shall be recorded by the licensed dealer . . not later than seven days following the date of such transaction . . . .. The record shall show the date of the sale or other dispo-

A jury returned a verdict of guilty on all counts, and Smith was sentenced to imprisonment for eighteen months under each of the substantive counts and five years on the conspiracy count. The eighteen month sentences are to run concurrently. The five year conspiracy sentence was suspended. Smith is to be placed on probation for five years after completion of the concurrent sentences.

Bob Smith is the son of Wilmot H. Smith, who is known as "Swat." (The nickname "Swat" will be used hereafter in reference to the father.) Swat was the owner of a pawn shop known as Swat's Loans. Swat held a federal license to deal in firearms. Bob Smith did not have and had never had a license to deal in firearms. Swat played no part in the acts of his son which were made the basis for this criminal prosecution nor did he have any knowledge of such acts.

In 1974 Swat suffered a stroke, and in 1974 and 1976 he had bypass and arterial surgery. The operations were not successful and Swat was not able to keep up with the business. Bob Smith was the oldest son in the family. He had grown up in and around the pawn shop. With Swat ill, he and other family members helped run the shop. Smith summed up the family concept of the shop's operation by saying, "We all just helped, my mother and my brother and everybody else."

On March 17, 1977, Charles Gonzales, a special agent with the Alcohol, Tobacco and Firearms Division of the Treasury Department, acting in an undercover capacity, approached Smith in the pawn shop with a proposition involving the purchase of various firearms without filling out the required Treasury forms. Agent Gonzales had been sent to Swat's Loans by A.T.F. Agent Lopez (who had acted in a similar undercover capacity in connection with the codefendant, Lee Loftis). Based on information received by him from Loftis, Agent Lopez instructed Agent Gonzales not to have any dealings with Swat, to stay away from him, and only to approach Bob.

The evidence unquestionably establishes that Smith sold fourteen guns to Agent Gonzales. Most of the firearms were the personal property of Smith and not part of the inventory of the pawn shop. Four of the guns, however, were from store inventory. With some exceptions, the guns sold by Smith to Agent Gonzales were kept in private areas of the store separate and apart from the display area which was open to the public. All of the firearms were sold without Smith's filling out the forms required by statute and Treasury regulations.

In its zealous attempt to enforce the Gun Control Act of 1968, the government may have overcomplicated a rather simple set of facts.[4] In order to unravel the case, as it is presented on appeal, it is necessary to analyze Smith's indictment in three separate groups of counts.

Counts 25 through 38 charge Bob Smith, as an agent and employee of a licensed dealer, with knowingly selling and delivering to Charles Gonzales firearms without noting in the said licensee's records, required to be kept pursuant to Section 923 of Title 18, United States Code, and the regulations promulgated thereunder, the name, age and place of residence of the said Charles R. Gonzales, all in violation of Title 18, United States Code, Sections 922(b)(5) and 924(a) and Section 2(b). Counts 39 through 52 charge Bob Smith, as an agent and an employee of Swat Smith, a licensed dealer, with knowingly and willfully causing Swat Smith, the said licensee, to

---

sition of each firearm . . . the name of the person to whom . . . transferred . . . ..

4. Smith was unquestionably a man without a license; yet the charges against him relate to the statutory requirements of licensed dealers. It would have been simple for the government to have charged Mr. Smith with a violation of Title 18, U.S.C., Section 922(a), selling firearms without a license, in addition to one group of counts charging him with violating 18 U.S.C. §§ 922(m) and 2(b). In doing so, it would have been impossible for Mr. Smith to deny his agency relationship with his father as he has done in Counts 39 through 52, without at the same time admitting that he was selling firearms without a license in violation of Section 922(a).

fail to make the appropriate entry in and properly maintain said records, all in violation of Title 18, United States Code, Sections 922(m) and 924(a) and Section 2(b). Count 53 charged that Smith conspired with Loftis to sell firearms without keeping the required records as required by 18 U.S.C. §§ 922(b)(5), 922(m), 924(a) and 923.

## I.

For ease of understanding, we will first consider Counts 39 through 52. In this group of counts, Smith was charged with knowingly and willfully causing his father to fail to properly maintain the required records of the sales of firearms to Charles Gonzales.

■ Smith admits the truth of the allegations in the indictment alleging purchases of firearms from him by Agent Gonzales. As to this group of counts, he contends first that his alleged violation of 18 U.S.C. § 2(b) must be judged on the basis of whether or not any violation of 18 U.S.C. § 922(m) was committed "knowingly" by his father. This position misinterprets the interplay of the two sections.

A similar question arose in the context of a criminal prosecution of a private citizen under a civil rights statute, in *United States v. Lester*, 363 F.2d 68, 73 (6th Cir. 1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967), and the Sixth Circuit held as follows:

> It has been beyond controversy, then, at least since the 1951 amendment to 18 U.S.C. § 2(b), that the accused may be convicted as causer, even though not legally capable of personally committing the act forbidden by a Federal statute, and even though the agent willfully caused to do the criminal act is himself guiltless of any crime.

A person who is incapable of committing a particular offense against the United States because he is not a member of a particular class, is nonetheless punishable as a principal, if he willfully causes an innocent person, capable of doing so, to commit the proscribed act, or as in this case, to fail to do a required act. Through his knowing and willful acts, to wit: selling his father's firearms on the licensed premises of his father, without making the records required by law, and without properly informing the licensee, Smith caused a licensee to fail to make and maintain the required records. In short Smith willfully caused an innocent licensee to fail to do what the law requires.

Section 2(b) removes all doubt that one who puts in motion or assists in an illegal enterprise or causes the commission of an indispensible element of an offense by an innocent agent or instrumentality, is guilty. Revisor's note, 18 U.S.C. § 2. It is not necessary for the intermediary to have a criminal intent. *United States v. Rapport*, 545 F.2d 802 (2d Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). There is no requirement of knowledge on Swat's part for Smith to be guilty.

Smith's second contention as to this group of counts is that the record is without evidence to support a jury finding that Mr. Smith was Swat's agent. The inquiry arises only in connection with the question as to whether Smith caused the licensee to fail to do that which the law requires.

We do not, of course, sit as a second jury. Our function is to review the record in the light most favorable to the government and to ascertain whether the jurors reasonably could decide that the evidence is inconsistent with the hypothesis of his innocence. *U. S. v. Warner*, 441 F.2d 821 (5th Cir.), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

■ Applying this test, we conclude that the jury was justified in finding that Smith was authorized to sell Swat's guns. Smith admitted that in the past he had bought, sold and traded guns at Swat's Pawn Shop. He admitted that he had acted as proprietor of his father's shop:

Q Have you ever operated that business over there for your father?

A I have acted as proprietor like I stated earlier, I have acted for him over there before, yes sir.

Q As a matter of fact, you have run that business for your father, have you not?

A Well, I have acted for him, Mr. Slough, if that is what you mean, I have done that.

He also stated that he had moved the pawn shop from one location to another. Agent Lopez testified that as far back as October 16, 1975, Smith had stated that he was acting as proprietor of the store.

Smith admitted that the four firearms alleged in Counts 47, 50, 51 and 52 were property of the pawn shop. He was fully aware of the record keeping requirements imposed on the licensed owner of the guns and his willful conduct resulted in those requirements not being met. As to these four counts, his conviction must therefore be affirmed.

## II.

Counts 25 through 38 involve the same fourteen guns as did Counts 39 through 52. Smith contends that as to these counts the evidence is insufficient. Specifically, he argues that the code Sections 922(b)(5) and 924(a) require only licensed dealers[5] to maintain records, that the evidence conclusively shows that he is not a licensed dealer and therefore that he cannot be found guilty of violating those sections. Unlike Counts 39 through 52, this group of counts does not contain factual allegations to the effect that Smith caused Swat to violate the law. They charge simply that Smith violated the law by selling guns without keeping the required records. They do contain an allegation, however, that Section 2(b) was one of the sections violated by such sales. We conclude that our analysis with respect to Counts 25 through 38 would parallel our analysis of Counts 39 through 52.

This court recently held in *United States v. Vines*, 580 F.2d 850 (5th Cir. 1978) that under 18 U.S.C. § 2 a person can be guilty as a principal without inclusion in the indictment of specific Section 2 factual allegations as long as the proof supports such a finding. In that case we said:

Moreover, " 'the rule is well established, both in this Circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he has merely aided and abetted the commission of the offense.' " *United States v. Longoria*, 5 Cir. 1978, 569 F.2d 422, 424; *United States v. Bullock*, 5 Cir. 1971, 451 F.2d 884, 888.

*United States v. Vines, supra*, at 853. Although *Vines* dealt with Section 2(a) we perceive no difference with the application of that rule when Section 2(b) is involved.

As to Counts 33, 36, 37 and 38, the proof showed that with at least implied authority Smith willfully caused the sale and delivery of firearms which belonged to Swat, a licensee, without maintaining the required records. As to these four counts also his conviction must be affirmed.

We perceive no difference in the pain or penalty to be suffered by Smith whether his conviction is affirmed either as to eight or twenty-eight counts. We therefore pretermit a count by count analysis of the remaining counts in either the first or second group and affirm the convictions of Counts 25 through 52 under the concurrent sentence doctrine. *See United States v. Ordoneaux*, 512 F.2d 63 (5th Cir. 1975).

## III.

As to Count 53, the conspiracy count, Smith argues that because he is not a li-

---

5. The term "dealer" was defined in 18 U.S.C. § 921(a)(11) as

(11) The term "dealer" means (A) any person engaged in the business of selling firearms or ammunition at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker.

Out of the generalized terminology of the term "dealer" as defined above Congress specifically and specially defined the term "licensed dealer" as follows:

The term "licensed dealer" means any dealer who is licensed under the provisions of this chapter [18 U.S.C. §§ 921–928]. 18 U.S.C. § 921(11).

censed dealer and because the evidence is insufficient to show a violation on his part under 18 U.S.C. § 2, this count falls by its very terms. We have already exposed the weakness of this argument with respect to the application of 18 U.S.C. § 2.

The holding of the sixth circuit in *U. S. v. Lester, supra*, at 73, adequately solidifies our position:

> So long as anyone who 'willfully causes an act to be done' which, 'if directly performed by him or another would be an offense against the United States', is punishable as a principal, it follows *a fortiori* that when two or more persons conspire willfully to 'cause' an act forbidden by § 2(b), they *ex necessitate* conspire to 'commit [an] offense against the United States' within the meaning of 18 U.S.C. § 371.

Smith's contention lacks merit in another respect. This court has recently held in a drug related case that all that is necessary to prove a conspiracy is to show an agreement by two or more persons to commit an offense against the United States and to show an overt act by one of them in furtherance of the conspiracy. *U. S. v. White*, 569 F.2d 263 (5th Cir. 1978). A conspiracy conviction requires only that one of the conspirators knowingly committed one of the overt acts charged in the indictment, and it is not necessary to find that the defendant committed one of the overt acts. *U. S. v. Kelly*, 569 F.2d 928 (5th Cir. 1978).

The evidence is uncontradicted that Lee Loftis, a federal firearms licensee, agreed with Bob Smith to sell firearms without maintaining the appropriate records in violation of Title 18, United States Code, Sections 922(b)(5), 922(m) and 924(a). It is also undisputed that in furtherance of their agreement, Lee Loftis had a conversation with Agent Lopez, that pursuant to such conversation, Lopez sent Agent Gonzales to Smith, and that as a result Smith sold the firearms to Gonzales.

Under the preceding rules the evidence is sufficient to support the conspiracy conviction. We affirm Smith's conviction on Count 53.

AFFIRMED.