UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-1678
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRUCE SHEAR,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

(May 28, 1992)


Before GARWOOD and DEMOSS Circuit Judges, and SCHWARTZ[*], District
Judge.

GARWOOD, Circuit Judge:

Following a jury trial, defendant-appellant Bruce Shear
(Shear) was convicted of a criminal violation of the Occupational
Health and Safety Act of 1970, 29 U.S.C. § 666(e) (OSHA or the
Act), and now brings this appeal. We reverse.

### Facts and Proceedings Below

In March 1987, Shear's employer, ABC Utilities Services, Inc.
(ABC), was awarded a contract to install a water line for the City

---

[*]    District judge of the Eastern District of Louisiana, sitting
by designation.

of Azle, Texas.  ABC is a small, family-owned construction company. Frank Wolfe is the president and owns approximately sixty percent of the stock of the corporation; his mother owns the remaining shares.  ABC employed between eighty and one hundred individuals, comprising between three and four work crews.  Wolfe, as president, was the final authority in the company.  Shear was the superintendent, and as such was the individual on site with the decision-making power to bind ABC.  Shear supervised a number of foremen.  He was neither an officer, director, nor stockholder of ABC.

On March 23, 1987, an ABC crew, which Shear was supervising, began to dig a ditch and lay a line of pipe that was ultimately to be connected to two other existing water lines.  The ditch was dug along the edge of a road where several utility lines had previously been installed.[1]  Because the ground had been previously excavated and backfilled during the installation of the utility lines, the ground was unstable and soft.  OSHA regulations then in force prohibited an employer from allowing employees to work in a ditch deeper than five feet in unstable soil unless the ditch was sloped, or a trench box[2] or other materials were used to sheet or shore the walls to protect the men from the danger of the trench collapsing.

---

[1]    There is some dispute as to how deep the ditch was.  The plans for the installation of the transmission line required that the line be laid at a depth of more than ten feet at that location.  Despite this requirement, it appears that the ditch was actually being dug at a depth of between six and nine feet.

[2]    A trench box is a structure that is set into an excavation to prevent cave-ins.  It has sheet metal on the outside and braces across the width of the structure.

*See* 29 C.F.R. § 1926.652 (b), (k) (1989). In spite of this, the trench walls were not sloped, shored, or braced, and a trench box was not used. As two ABC employees were laying pipe in the trench, one of the trench walls collapsed. Marcos Chairez Luna (Luna), one of the employees, was trapped inside the trench and killed.

On December 13, 1990, ABC and Shear were both charged in a two-count indictment with violating OSHA, 29 U.S.C. § 666(e). In Count One, ABC and Shear were charged with willfully failing to cease all work and excavation until necessary precautions were taken to safeguard employees where evidence of possible cave-ins was apparent, in violation of section 666(e), 29 C.F.R. § 1926.650(i) and 18 U.S.C. § 2. In Count Two, ABC and Shear were charged with willfully failing to shore, sheet, brace, slope, or otherwise support the sides of a trench more than five feet deep, which was located in unstable and soft material, by means of sufficient strength to protect employees working in the trench, in violation of section 666(e), 29 C.F.R. § 1926.652(b) and 18 U.S.C. § 2. On February 4, 1991, Shear moved to dismiss the indictment on the grounds that it failed to allege an assertedly essential element of the offense, namely that Shear was an employer. The district court denied the motion on February 19, 1991.

The case proceeded to trial before a jury, beginning April 29, 1991. After the Government rested, Shear filed a Motion for Judgment of Acquittal and Brief, arguing that he was not an employer and thus could not be liable as an aider and abettor. He reurged the motion at the close of all the evidence. Shear was convicted of Count Two and acquitted of Count One. ABC was

convicted of both counts. On June 7, 1991, the district court suspended imposition of the sentence of imprisonment and placed Shear on probation for 3 years, subject to several special conditions, including the completion of 100 hours of community service and the payment of a $5000 fine.

## Discussion

Shear argues that because his alleged violation of 29 C.F.R. § 1926.652(b) was committed as an employee of ABC, he cannot be guilty either of violating section 666(e) or of aiding and abetting ABC in its violation of section 666(e). Section 666(e) provides that

> "[a]ny employer who willfully violates any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both."

OSHA defines employer as "a person engaged in a business affecting commerce who has employees." 29 U.S.C. § 652(5). "Employee" is defined as "an employee of an employer who is employed in a business of his employer which affects commerce." 29 U.S.C. § 652(6).

While the criminal liability of an employee under section 666(e) is an issue of first impression in this Circuit, it has recently been addressed by the Seventh Circuit. *See United States v. Doig*, 950 F.2d 411 (7th Cir. 1991). In *Doig*, the manager of a tunnel project in which three employees were killed when his employer violated OSHA regulations was charged with aiding and abetting his corporate employer in violating section 666(e).

4

Doig's corporate employer was charged and convicted under section 666(e) for willful violations of OSHA regulations that resulted in the death of the three employees. The district court, however, dismissed the indictment against Doig, and the Seventh Circuit affirmed the dismissal. *See id.* at 412. The Seventh Circuit held that Congress did not intend to subject employees to aiding and abetting liability under OSHA. *Id.* We are in general agreement with the Seventh Circuit's reasoning and holding in *Doig.*

The terms "employer" and "employee" are defined in the statute. The duties of employers and employees are also carefully delineated. *See* 29 U.S.C. § 654. Section 654(a) requires "[e]ach employer" to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" and to "comply with occupational safety and health standards promulgated under this chapter." *Id*. Section 654(b) requires "[e]ach employee" to "comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct." *Id.* Section 666, entitled "Civil and Criminal Penalties," establishes the civil and criminal penalties for violating OSHA. It distinguishes between employers and broader classes of individuals in imposing liability. For example, subsection (f) imposes lability upon "[a]ny person" who gives advance notice of an inspection, and section (g) imposes liability on "[w]hoever" makes false statements or representations. In contrast, subsections (a)-(e) and (i) penalize "any employer."

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972). This juxtaposition indicates that Congress intended to subject employers, but not employees, to criminal liability under section 666(e). *See Doig*, 950 F.2d at 414.

In reaching this conclusion, we also rely on *Atlantic & Gulf Stevedores v. Occupational, Safety & Health Review Commission*, 534 F.2d 541 (3rd Cir. 1976). In *Atlantic & Gulf Stevedores*, the Third Circuit held that OSHA does not confer on the Occupational Safety and Health Review Commission or the Secretary of Labor the power to sanction employees for disregarding safety standards and commission orders. The court noted that individual sections of OSHA, such as the employee duty provision contained in section 654(b), "cannot be read apart from the detailed scheme of enforcement" found in sections 658, 659, and 666 of OSHA and determined that "this enforcement scheme is directed only against employers." The Third Circuit specifically found that section 666 "provides for the assessment of civil monetary penalties only against employers." *Id.* at 553. In reaching this conclusion, the court held that "this result precisely coincides with the congressional intent." *Id.* The court relied in part on a Senate report discussing the employee duty section of OSHA:

> "`The committee does not intend the employee-duty provided in section 5(b) [29 U.S.C. § 654(b)] to diminish in anyway the employer's compliance responsibilities or

6

his responsibilities to assure compliance by his own employees. Final responsibility for compliance with the requirements of this act remains with the employer.'" *Id.* at 554 (quoting S. Rᴇᴘ. Nᴏ. 91-1282, 91st Cong., 2d Sess. 10-11, *reprinted in* 1970 U.S. Cᴏᴅᴇ Cᴏɴɢ. & Aᴅᴍɪɴ. Nᴇᴡs 5177).

The court concluded that "it cannot be seriously contended that Congress intended to make the amenability of employees to coercive process coextensive with employers." *Id.*[3]

---

[3] Although not cited by either of the parties, *Moore v. Occupational Safety & Health Review Comm'n*, 591 F.2d 991 (4th Cir. 1979) arguably furnishes inferential support for the conclusion that OSHA is intended only to sanction employers for not providing a safe workplace. In *Moore*, the Occupational Safety and Health Review Commission upheld a $16,500 penalty imposed on Life Science Products Co. and the managing officers and directors of Life Science, Moore and Hundtofte, for violations of OSHA. The defendants appealed, disputing only Moore's and Hundtofte's individual liability on the grounds that they were not employers within the meaning of OSHA. The Fourth Circuit affirmed the Commission based on the unique facts of the case. On June 1, 1975, Life Science was dissolved by operation of law for failure to pay franchise taxes. Moore and Hundtofte, however, continued normal operations of the plant. On August 13, 1975, the corporate charter was reinstated. Two theories of liability were argued before the administrative law judge:

> "The primary theory on which liability of the individual employers was predicated was that, during the period Life Science was dissolved but its plant's operations were continued by the individual appellants, the latter were operating the plant as partners and as such were employers. As an additional ground for individual liability, the secretary contended the appellants so directed the activities of the corporation that they should be held liable as responsible employers for the violations of the Act." *Id.* at 993.

The Fourth Circuit, after interpreting the Virginia statutes governing corporate dissolution by operation of law and reinstatement of a corporate charter, determined that "the appellants did incur personal liability as `employers' under the Act for the violations between June 1, 1975, and August 13, 1975, and for the penalty assessed because of such violations, and the subsequent reinstatement of the corporate charter did not relieve them of such liability" and found it unnecessary to consider the alternative ground of liability. *Id.* at 996. The Fourth

7

In response, the Government argues that supervisory employees of a corporate employer can be held principally liable as employers under section 666(e) and that because Shear was a superintendent for ABC his conviction should be affirmed. *See United States v. Doig*, 950 F.2d 411, 415 (7th Cir. 1991); *United States v. Pinkston-Hollar, Inc.*, 4 O.S.H. Cas. (BNA) 1697, 1699 (D. Kan. Aug. 16, 1976). *Doig* and *Pinkston-Hollar* both suggest that corporate officers may be convicted of substantive violations of section 666(e). In *Doig*, the Seventh Circuit disagreed with the proposition that "*any* corporate employee may be found liable for aiding and abetting an employer's violation of OSHA." *Doig*, 950 F.2d at 414. The court stated instead that "[a] corporate officer or director acting as a corporation's agent could be sanctioned under § 666(e) as a principal, because, arguably an officer or director would be an employer. . . . We hold that an employee who is not a corporate officer, and thus not an employer, cannot be sanctioned under § 666(e)." *Id.* In *Pinkston-Hollar*, the defendant argued that he was not liable under section 666(e) because he was not an employer under section 652(5). The district court noted that this was "a good point," and that the "Government will have to prove as an element of the offense charged that Pinkston is in fact an `employer' under the Act." *Pinkston-Hollar*, 4 O.S.H. Cas. at 1699.

---

Circuit's narrow holding that corporate officers and directors are liable under OSHA when they incur personal liability under state law because they continue to operate the business after the corporate charter has been dissolved inferentially supports our interpretation that OSHA does not impose liability on corporate employees generally.

Here, Shear's conviction may not be sustained on the theory that he was an employer. Neither count of the indictment charged that Shear was an employer or the equivalent thereof. Nor does either count allege anything about the nature of his relationship to ABC. The evidence adduced at trial confirms that Shear acted solely as an employee of ABC. Shear was not an officer, director, or stockholder of ABC, and had no financial interest in the job that was being performed. OSHA requires employees, as well as employers, to comply with safety standards and regulations. But the Act only imposes criminal liability on employers for willfully violating such standards or regulations. While employees have a duty to follow OSHA regulations, Congress has chosen not to criminalize employee abdications of that responsibility. The evidence does not show that Shear was an employer. The fact that Shear's actions as an employee, in failing to order use of a trench box or sloping of the ditch as required by section 1926.652(b), were a cause of Luna's death cannot mysteriously transform Shear into an employer criminally liable under the Act.

Moreover, the jury was not required to find that Shear was an employer. The court's charge instructed the jury that:

> "To sustain the charge alleged in each count of the Indictment against Bruce Shear, the government must prove each of the following beyond a reasonable doubt:
>
> "<u>First</u>: That the defendant ABC Utilities Services, Inc. was an employer engaged in a business affecting commerce.
>
> "<u>Second</u>: That the defendant ABC Utilities Services, Inc. violated, by act or omission, an OSHA regulation.
>
> "<u>Third</u>: That the violation of the regulation

9

was willful.

> "Fourth:  That the violation of the regulation caused the death of an employee, and

> "Fifth:  That the defendant Bruce Shear aided and abetted the defendant ABC Utilities Services, Inc. in the commission of the offenses described above."

The district court further instructed the jury that "[y]ou need not find that defendant Bruce Shear is an `employer' under the OSHA statute in order to find him guilty of aiding and abetting a violation of that statute."

While we acknowledge the language in *Doig* and *Pinkston-Hollar* that in some situations supervisory employees could be prosecuted under § 666(e) as employers, we are not here presented with such a case, and thus do not decide whether or under what circumstances such an individual could be found liable under section 666(e).[4]  On this record, Shear's conviction cannot be sustained on the theory that he was an employer and thus criminally liable under section 666(e).

The Government, however, does not rely solely on its

---

[4]    We have looked by way of possible analogy to cases interpreting "employer" under Title VII, 42 U.S.C. § 2000e(b). We note that we have held employees with supervisory responsibility liable as employers under Title VII in some cases. *See Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990);  *Hamilton v. Rodgers*, 791 F.2d 439, 442-43 (5th Cir. 1986).  We have reached this conclusion, however, by interpreting the specific definition of "employer" contained in Title VII.  Section 2000e(b) defines an employer as "a person engaged in an industry affecting commerce . . . and *any agent* of such a person."  42 U.S.C. § 2000e(b) (emphasis added). In *Harvey* and *Hamilton*, we held that because employees with supervisory responsibility were "agents" of the employer, they themselves could be considered employers under Title VII.  However, the definition of employer contained in OSHA contains no similar or analogous language defining an employer in terms of its agents or others related to it.

contention that Shear can be convicted as an employer. It maintains also that he may be convicted under section 666(e) pursuant to the provisions of 18 U.S.C. section 2. Under section 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." *Id*. Section 2(b) provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." *Id*.

We recognize the facially unlimited scope of section 2 and the corollary general rule that "a defendant who is not in the class of persons to whom a substantive statute is directed may still be guilty of aiding and abetting for causing, inducing, or procuring the statutory violation." *United States v. Odom*, 736 F.2d 150, 152 (5th Cir. 1984) (citing *Standefer v. United States*, 100 S.Ct. 1999, 2005 n.11 (1980)).[5] This has long been so, both for common law and statutory offenses. *See* 2 W. LaFave & A. Scott, *Substantive*

---

[5] This principle may have found its most frequent application in cases where the underlying statute imposed criminal responsibility on "whoever" committed certain acts, and did not limit liability to a specific class of individuals. Thus, *Odom* dealt with 18 U.S.C. § 1027 ("whoever . . . makes any false statement or representation of fact . . . ."). *Odom*, at 151 n.1. Another frequently cited example is *United States v. Lester*, 363 F.2d 68, 72-73 (6th Cir. 1966), *cert. denied*, 87 S.Ct. 951 (1967), dealing with 18 U.S.C. § 242. However, the principle is not limited to such cases, and extends to underlying statutes that criminalize acts by a particular class of individuals. *See, e.g., United States v. Smith*, 584 F.2d 731 (5th Cir. 1978), and *United States v. Scannapieco*, 611 F.2d 619 (5th Cir. 1980), which allowed one not a licensed firearm dealer to be convicted of aiding and abetting a violation of certain provisions of 18 U.S.C. § 922 denouncing conduct by licensed dealers.

11

*Criminal Law*, § 6.8(e) at 163-165 (West 1986).[6]  Nevertheless, despite this long tradition and the facial breadth of section 2, it is equally well recognized that the referenced general rule is not without exceptions. *See, e.g., United States v. Falletta*, 523 F.2d 1198, 1199-1200 (5th Cir. 1974); *United States v. Southard*, 700 F.2d 1, 19-20 (1st Cir. 1983) (exceptions for victims, for members of particular class intended to be specially protected by the statute, and where "the legislature, by specifying the kind of individual who is to be found guilty when participating in a transaction necessarily involving one or more other persons, must not have intended to include the participation by others in the offense as a crime. . . . even though the statute was not intended to protect the other participants."); *United States v. Amen*, 831 F.2d 373, 381-82 (2d Cir. 1987) (pursuant to the rule that "[w]hen Congress assigns guilt to only one type of participant in a transaction, it intends to leave the other unpunished for the offense," there is no aider and abettor liability under the drug kingpin statute, 21 U.S.C. § 848, either for the kingpin's employees or third parties); *United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987) (same); *United States v. Pino-Perez*, 870 F.2d 1230, 1231-32 (7th Cir. 1989) (en banc) (recognizing the three *Southard* exceptions; and holding that although "persons supervised

---

[6]   Indeed, we have said that Congress's 1951 amendment to section 2(b) "removes all doubt that one who puts in motion or assists in an illegal enterprise or causes the commission of an indispensable element of an offense by an innocent agent or instrumentality, is guilty" so that "[i]t is not necessary for the intermediary to have a criminal intent." *United States v. Smith*, 584 F.2d 731, 734 (5th Cir. 1978).

by the kingpin cannot be punished as aiders and abettors" of a 21 U.S.C. § 848 offense, those "who assist a kingpin but are not supervised, managed or organized by him" can be). *See also* LaFave & Scott, *supra* § 6.8(e) at 165-66.[7]

The issue of employee aider and abettor liability for section 666(e) violations partakes of two of the exceptions noted in *Southard* and *Pino-Perez* to section 2 liability. Employees of OSHA-covered employers are clearly members of the particular class for whose special protection OSHA was enacted. *See* 29 U.S.C. § 654(a); *see also* 29 U.S.C. § 651(b). Moreover, while it is theoretically possible that a covered employer could violate section 666(e) without being aided or abetted by one or more of his or its employees, Congress must have realized that the overwhelming majority of section 666(e) violations would be committed through the actions of employees of the covered employer. Every principal violator of section 666(e) necessarily "has employees" in the covered business, section 652(5) & (6), and while there will be some sole proprietorships or partnerships that violate section 666(e) only through the actions of the proprietor or partners,

---

[7]    We also observe that exceptions have been recognized to the facially unlimited scope of other general criminal statutes. For example, the facially unlimited reach of 18 U.S.C. § 924(c) was somewhat cabined in *Busic v. United States*, 100 S.Ct. 1747, 1753 (1980), in reliance on "two tools of statutory construction":

> "The first is the oft-cited rule that '"ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."' [citations omitted]  And the second is the principle that a more specific statute will be given precedence over a more general one, regardless of their temporal sequence."

*See also United States v. Farrar*, 50 S.Ct. 425, 427 (1930).

13

without any employee committing or participating in the violation of the administrative standard or regulation, it is plainly evident that such violations will be comparatively rare exceptions. The obviously typical, not the aberrational, case should be the basis on which we gauge congressional intent.

Viewed in this perspective, we find instructive the Supreme Court's opinion in *Gebardi v. United States*, 53 S.Ct. 35 (1932). There the court held that the woman, who consented and agreed to be transported in interstate commerce for immoral purposes, could not be convicted of conspiring with the man who transported her to violate the Mann Act. The Supreme Court observed:

> "Congress set out in the Mann Act to deal with cases which frequently, if not normally, involve consent and agreement on the part of the woman to the forbidden transportation. In every case in which she is not intimidated or forced into the transportation, the statute necessarily contemplates her acquiescence. Yet this acquiescence, though an incident of a type of transportation specifically dealt with by the statute, was not made a crime under the Mann Act itself." *Id*. at 37.
>
> ". . . .
>
> ". . . [W]e perceive in the failure of the Mann Act to condemn the woman's participation in those transportations which are effected with her mere consent, evidence of an affirmative legislative policy to leave her acquiescence unpunished. We think it a necessary implication of that policy that when the Mann Act and the conspiracy statute came to be construed together, as they necessarily would be, the same participation which the former contemplates as an inseparable incident of all cases in which the woman is a voluntary agent at all, but does not punish, was not automatically to be made punishable under the latter." *Id*. at 38.[8]

---

[8] While *Gebardi* deals with the general conspiracy statute, rather than the aiding and abetting statute, this is not a material distinction "since the logic of the argument has identical force in either context." *Falletta*, 523 F.2d at 1200.

14

The same reasoning, it appears to us, leads to the conclusion that the structure of OSHA evidences an affirmative legislative policy to leave unpunished those employees who, in their capacity as such, merely aid and abet their employer's violation of section 666(e) by committing, or participating or assisting in, the acts or conduct constituting the employer's violation.

In *Falletta*, we recognized the continuing and general validity of the *Gebardi* approach to aider and abettor liability. 523 F.2d at 1199. However, we held it unavailing to insulate from section 2 liability one who aided and abetted a convicted felon in his receipt of a firearm contrary to 18 U.S.C. § 1202(a), which proscribes receipt, possession, and transportation of a firearm in interstate commerce by a convicted felon. The defendant's argument was that "Congress' failure to impose liability on the transferor indicates a legislative desire that such a person should go unpunished." *Id*. We recognized "respectable authority supporting this approach to statutory construction," citing *Gebardi* and quoting its above set out language at 53 S.Ct. 38. *Falletta*, 523 F.2d at 1199. We also cited cases applying "the *Gebardi* reasoning in other contexts." *Id*. However, we ultimately concluded that "contrary and overriding indications are present in this case." *Id*. at 1200. We explained:

> "It appears to us that Congress did not focus clearly on the 'receiving' aspect of this statute and therefore did not go through the thought processes Falletta ascribes to it. The main objective of §§ 1201-03 . . . was to restrict the *possession* of firearms by certain groups of people.
>
> ". . . .

15

"Since possession was the real focus of attention, it is likely that Congress did not confront the issue presented in the instant case. Whatever may be said about receipt, it is clear that possession is not inherently a transaction between two persons. Thus Congress' attention would not have been drawn to the liability of those cooperating in a violation of § 1202(a). Under these circumstances we cannot find, as *Gebardi* did, an 'affirmative legislative policy' to create an exemption from the ordinary rules of accessorial liability." *Id*. at 1200 (footnote omitted).

Here, as above explained, it is evident that Congress's attention must have been drawn to employee violations of section 655 standards or regulations, for it was obvious those would constitute the vast majority of the violations (both willful and otherwise) of such standards or regulations. Moreover, Congress specifically required each "employee" to comply with such standards and regulations as applicable to his own actions and conduct. Section 654(b). Further, unlike those considered in *Falletta* who furnished guns to felons, employees of covered OSHA employers are a limited class not only expressly dealt with in the statute but also one for whose special protection the statute was enacted. We follow *Falletta*'s "affirmative legislative policy" approach, but it produces a different result here because of the very different legislative context.

The Seventh Circuit has likewise endorsed *Falletta*'s "affirmative legislative policy" approach. *See Pino-Perez*, 870 F.2d at 1234. We agree with *Doig*'s conclusion "that the affirmative legislative policy placing the onus of workplace safety upon employers precludes finding that an employee may aid and abet

16

his employer's criminal OSHA violation." *Id.* at 413.[9]

We observe that one of OSHA's stated purposes is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources . . . by providing that employers and employees have separate but dependent responsibilities and rights with respect to achieving safe and healthful working conditions." 29 U.S.C. § 651(b)(2); *see also* § 654(a). Further evidence of this policy is found in the structure of OSHA's civil and criminal liability provisions. Section 666 of OSHA establishes several statutory offenses that apply either to employers specifically or generally to "whoever" or "any person" (which could include employers, employees, or independent third parties). All Shear did was act as an employee in supervising the digging of the trench; he did not take any action separate from his role as an employee. Indeed, it is evident that ABC's violation of section 666(e) was essentially committed through Shear's conduct as its employee.[10] We have held that Shear could not be convicted directly under section 666(e). We now further hold that neither can Shear be held criminally

_____

[9] We note that the panel members in *Doig* had all joined the majority opinion in *Pino-Perez*, which had resisted any broad expansion of exceptions to aider and abettor liability.

[10] And here, as in *Doig* (950 F.2d at 415 n.6), no one other than ABC and Shear was charged. We agree with *Doig* that it is logically inconsistent to hold the employer liable under section 666(e) on the basis of its employee's conduct and at the same time hold the employee, on the basis of the same conduct, liable for aiding and abetting the employer's violation. *Doig* at 415. One cannot aid and abet himself. *See Morgan v. United States*, 159 F.2d 85 at 87 (10th Cir. 1947); *see also United States v. Morris*, 612 F.2d 483 (10th Cir. 1979).

liable as an aider or abettor. To allow aider and abettor liability to be imposed in these circumstances would effectively rewrite the statute so that "employer" reads "employer or employee" or "whoever" or "any person." This we refuse to do. Congress clearly demonstrated in OSHA that it was capable of imposing liability thereunder on parties other than employers when it so desired. *See* 29 U.S.C. § 666(f), (g). We refuse to upset the careful balancing that Congress established in section 666(e) by judicially imposing aider and abettor liability on employees.

It also strikes us as unseemly and unwise for the courts and the Executive Branch to bring in through the back door a criminal liability so plainly and facially eschewed in the statute creating the offense. We blink at reality if we ignore the obvious difference in potential political consequences between the statute as enacted and one in which section 666(e) were written to apply not merely to "any employer" but rather to "any employer or employee" or "whoever" or "any person." Proper functioning of the democratic process counsels that in these matters Congress, not the courts, should make such basic "hard" decisions.

Here, Shear's conduct that is claimed to constitute his aiding and abetting of ABC's section 666(e) violation was taken entirely in his capacity as an ABC employee and in essence amounted to the very conduct that constituted ABC's violation. We hold that for such acts, OSHA intends only the employer, not the employee, to be criminally responsible. We are not presented with, and do not address, the situation where a third party, or even an employee acting in some other capacity, is charged with aiding and abetting

18

an employer's violation of section 666(e).

## Conclusion

Our foregoing holdings dispose of this appeal, and we hence do not reach any of Shear's other contentions.   In this tragic accident, Shear was, and acted only as, an employee of ABC, and cannot be convicted of violating section 666(e) either as a principal or as an aider and abettor of ABC's violation thereof. Accordingly, Shear's conviction is

REVERSED.