UNITED STATES of America, Plaintiff,

v.

John CUSACK, Defendant.

Crim. No. 92–514.

United States District Court,
D. New Jersey.

Nov. 5, 1992.

Michael Chertoff, U.S. Atty., Newark, N.J. by William D. Braun, U.S. Dept. of Justice, GLLAS Section, Washington, D.C., for plaintiff.

John F. McMahon, Federal Public Defender by James I. O'Hern, Asst. Federal Public Defender, Newark, N.J., for defendant.

OPINION

DEBEVOISE, District Judge.

The indictment in this case charges that defendant, John Cusack, and unindicted co-defendant Quality Steel, Inc. ("Quality Steel") knowingly and willfully violated specified standards promulgated pursuant to the Occupational Safety and Health Act ("OSHA"), thereby causing the death of employee Hugo Castro, in violation of 29 U.S.C. § 666(e) and 18 U.S.C. § 2.

Section 666(e) of OSHA provides

Any *employer* who willfully violates any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than $20,000 or by imprisonment for not more than one year, or both. (Emphasis added.)

Section 2 of 18 U.S.C. provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Defendant moves to dismiss the indictment asserting that he was not an employer within the meaning of § 666(e) and that under applicable case law he cannot be charged as an aider and abettor under 18 U.S.C. § 2.

## A. The Charges

The indictment charges that Quality Steel was a New Jersey corporation engaged in the structural steel assembly business and that defendant was an officer and director of Quality Steel and in fact an employer as defined in § 652(5) of OSHA.

According to the indictment Quality Steel was retained to erect the structural steel frame for a warehouse to be constructed in Riverdale, New Jersey, and defendant "supervised and directed the construction of the structural steel frame ... by Quality Steel, Inc. employees."

Pursuant to § 655 of OSHA the Secretary of Labor is empowered to issue occupational safety and health standards and has in fact issued standards which (i) require the installation of a center row of bolted bridging on steel joists 40 feet or more in length before slacking the hoisting line of the crane and (ii) prohibit placing loads on unbridged open web steel joists.

Finally the indictment charges that from on or about September 13, 1989 to on or about September 21, 1989 at the Riverdale construction site defendant and Quality Steel knowingly and willfully violated the two standards referred to above, thereby causing the death of an employee, Hugo Castro.

In its brief in opposition to defendant's motion the government asserted additional facts which, presumably, it is prepared to prove at trial.

First, the government described civil proceedings which it brought against Quality Steel. The government investigated the death and, as a result of its investigation, issued civil citations to Quality Steel alleging two "willful" violations of OSHA structural steel assembly regulations and five "serious" violations relating to the absence of information and training to avoid unsafe conditions. The total penalty originally assessed against Quality Steel was $20,000 for its willful violations and $3,560 for the remaining serious violations. Quality Steel entered into a settlement agreement with the government on February 5, 1990, under which the penalty for the willful violations was reduced to $16,000 and the penalty for the serious violations was reduced to $600. The defendant signed the settlement agreement on behalf of Quality Steel.

Quality Steel made three monthly payments of $1,844.44 for March, April and May of 1990. After paying $5,533.32 of its penalty, Quality Steel ceased making its monthly payments and currently owes a balance of $11,066.68.

Next, the government described defendant's relationship to Quality Steel. Quality Steel was incorporated in December 1988. It had two directors—Lawrence Karpinsky, who supplied its capital, and defendant, who became its president and only officer. According to the government's brief submitted in opposition to the pending motion, its proofs will show that

the defendant exercised complete control over Quality Steel. Although the defendant's business was incorporated, he ran it as a sole proprietorship. The defendant made every decision for the company, controlled its operations and had unlimited access to its funds. He alone hired and fired its employees and decided how much to pay them; he signed Quality Steel's employees' paychecks; he established his own pay and changed it at will; he made all the bids for jobs; he ordered all necessary materials; and he directed where, when and how work would proceed. When he needed cash, he would write himself checks from the corporate checking account. He ran the company out of his private home and he had unrestricted discretion to operate the company as he saw fit. Finally, when the defendant abandoned the company in December of 1990, it ceased operations.

Thus the issue is whether in these circumstances, if proved, defendant is an "employer" within the meaning of § 666(e) so as to be subject to its criminal penalties. Stated otherwise, does the statute require and does the Constitution permit, the government to disregard the formal corporate structure in order to hold the defendant criminally responsible under § 666(e) as an employer for a violation of an OSHA standard causing death to an employee.

### B. Discussion

The provisions of § 666(e) are quoted above.

The term "employer" is defined in § 652(5) as "a person engaged in a business affecting commerce who has employees...."

"Person" is defined in § 652(4) as "one or more individuals, partnerships, associations, corporations, business trusts, legal representatives, or any organized group of persons."

"Employee" is defined in § 652(6) as "an employee of an employer who is employed in a business of his employer which affects commerce."

The decedent Hugo Castro was without doubt an employee. Defendant most assuredly is a person and it must be determined whether he may be found to be a person who had employees. The answer is not to be found, as defendant suggests, in *Atlantic & Gulf Stevedores v. Occupational Safety*, 534 F.2d 541 (3d Cir.1976). There the Court simply held that neither the Secretary of Labor nor the Occupational Safety & Health Review Commission had the power under pertinent provisions of OSHA to sanction employees. Sanctions could only be imposed against employers. The case provides no assistance in determining whether defendant may be deemed an employer in the circumstances of this case.

Two other cases are more pertinent to the issues in the present case. *United States v. Doig*, 950 F.2d 411 (7th Cir.1991) and *United States v. Shear*, 962 F.2d 488 (5th Cir.1992).

In *Doig* the government indicted the S.A. Healy Company and Patrick J. Doig, its manager of a tunnel project, charging 12 counts of criminal violations under § 666(e). Doig was charged with aiding and abetting. Doig moved to dismiss, asserting that because he was not an employer he could not be held criminally liable under § 666(e) either as a principal or as an aider and abettor. The district court granted the motion. A jury convicted the company on all counts. The government appealed the order dismissing Doig.

The government did not argue that Doig was an employer, relying solely on the aider and abettor provisions of § 2(a). The Court of Appeals noted the general rule that the provisions of § 2(a) apply automatically to every criminal offense unless there is an affirmative legislative policy to create an exemption from the ordinary rules of accessorial liability, citing *United States v. Pino–Perez*, 870 F.2d 1230 (7th Cir.1989). The Seventh Circuit, however, found a legislative policy in OSHA to exempt employees from accessorial liability. It cited *Atlantic & Gulf Stevedores* for the proposition that sanctioning employees [in civil enforcement proceedings] for OSHA violations is not part of the detailed scheme of

enforcement Congress established in the statute.

The Court noted that Congress carefully defined the terms "employer" and "employee" and used the term "person" in those provisions where a broader statutory reach was intended. Relying upon *Atlantic & Gulf Stevedores* and upon the statutory language, the Court concluded that Congress intended to subject only employers to criminal liability under § 666(e) and that this liability cannot be extended to employees by resort to the aiding and abetting statute. The district court's dismissal of the indictment was affirmed.

This conclusion, however, did not resolve the issue raised in the present case, i.e., whether a corporate officer and director can have such extensive control of a corporation and its operations that he will be deemed to be an employer subject to the penalties imposed by § 666(e). In dicta, the Seventh Circuit stated, "[a] corporate officer or director acting as a corporation's agent could be sanctioned under § 666(e) as a principal, because, arguably an officer or director would be an employer." 950 F.2d at 414.

The *Doig* opinion noted the case of *United States v. Pinkston–Hollar, Inc.*, 4 O.S.H. Cas. (BNA) 1697, 1699 (D.Kan.1976) in which the court stated that "responsible corporate officials who have the power to prevent or [correct] violations of the Occupational Safety and Health Act may be prosecuted [as an aider and abettor] in the same sense as they may under the Federal Food, Drug & Cosmetic Act of 1938." However, in *Pinkston–Hollar* the court explained that it would still be necessary to find that the corporate official was an employer before imposing § 666(e) criminal sanctions.

In *Shear* the Fifth Circuit addressed the question whether a job supervisor could be charged and convicted as an aider and abettor of a § 666(e) offense.

ABC Utilities Services, Inc. ("ABC") was a small, family-owned construction company of which Frank Wolfe was president and owner of 60% of the stock (his mother owning the balance of the shares). ABC employed 80 to 100 persons organized into three or four work crews. The company was awarded a contract to install a water line. Shear was the superintendent on the job and as such had decision-making power to bind ABC. He was neither an officer, director, nor stockholder of ABC.

During construction a ditch caved in, killing an employee. The government charged two OSHA violations caused the accident and obtained a two count indictment against ABC and Shear. Each count relied on § 666(e) and the aiding and abetting provisions of 18 U.S.C. § 2. The district court denied Shear's motion to dismiss the indictment even though the indictment failed to allege that Shear was an employer. In its charge at the conclusion of the trial the court instructed the jury that if it found that the government had proved the essential elements of the offense against ABC then it could find Shear guilty if the government had also proved "[t]hat the defendant Bruce Shear aided and abetted the defendant ABC Utilities Services, Inc. in the commission of the offenses described above." The court informed the jury that "[y]ou need not find that defendant Bruce Shear is an 'employer' under the OSHA statute in order to find him guilty of aiding and abetting a violation of that statute." ABC was convicted on both counts; Shear was convicted on one count.

The Fifth Circuit reversed Shear's conviction. After a careful review of the language of the statute and existing precedent (*Atlantic & Gulf Stevedores* and *Doig*) it ruled that "the structure of OSHA evidences an affirmative legislative policy to leave unpunished those employees who, in their capacity as such, merely aid and abet their employer's violation of section 666(e) by committing, or participating or assisting in, the acts or conduct constituting the employer's violation." 962 F.2d at 494. The court acknowledged "the language in *Doig* and *Pinkston–Hollar* that in some situations supervisory employees could be prosecuted under § 666(e) as employers," but stated "we are not here presented with such a case." 962 F.2d at 492.

I conclude that both the holdings and the dicta in *Doig* and *Shear* are sound. Their dicta lead to the conclusion that an officer's or director's role in a corporate entity (particularly a small one) may be so pervasive and total that the officer or director is in fact the corporation and is therefore an employer under § 666(e). To conclude that such a person cannot be held liable under OSHA's criminal provisions would strip § 666(e) of much of its force when applied to closely held corporations where, as in the present case, the owner and principal officer is also the person actively supervising the work in which OSHA regulations were violated. In such a case it would seem that Congress' intent is implemented by recognizing the reality of the situation and treating the officer and director as the employer.

This result in no way conflicts with the holdings of *Doig* and *Shear*. If an employee's role is not substantial enough to raise him to the level of an employer, he cannot be charged either as a principal under § 666(e) or as an aider and abettor under 18 U.S.C. § 2.

Relying upon the reasoning of the dissent in *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), defendant urges that the language of § 666(e) does not plainly and unmistakably impose criminal liability upon a corporate officer and that, in effect, it would deprive him of due process to charge and convict him of an offense under such a statute.

In *Dotterweich* the Supreme Court construed provisions of the Federal Food, Drug and Cosmetic Act which prohibited the introduction into interstate commerce of any adulterated or misbranded drug and which provided that "any person" violating the provision was guilty of a misdemeanor. Dotterweich, president of Buffalo Pharmacal Company, and the company were charged with a violation of the Act. Dotterweich, but not the company, was convicted. The Supreme Court held that Dotterweich was a "person" subject to the Act's criminal provisions and that even though consciousness of wrongdoing was totally wanting he could be held liable if it were shown that he shared responsibility in the business process resulting in the unlawful distribution.

The dissenting opinion of Justice Murphy (in which three other Justices concurred) stated that to charge a person who had no evil intention or consciousness of wrongdoing with a criminal act in the absence of clear statutory authority departs from fundamental principles of Anglo-Saxon jurisprudence and "is inconsistent with established canons of criminal law." 320 U.S. at 286, 64 S.Ct. at 139.

The majority opinion in *Dotterweich* was followed in *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), and therefore defendant receives little comfort from the *Dotterweich* dissent. In point of fact the present case does not involve imposition of a criminal penalty upon a person who engaged in no active or knowing wrongdoing, as in *Dotterweich* and *Park*. Rather, to return a verdict of guilty against defendant a jury will not only have to find that his role in Quality Steel was so pervasive as to constitute him an employer, it will also have to find (i) that he, as such employer, was engaged in a business affecting commerce, (ii) that he violated, by act or omission, an OSHA regulation, (iii) that the violation of the regulation was willful and (iv) that the violation of the regulation caused the death of an employee.

I conclude that if the government can prove that defendant played the role in Quality Steel which is alleged in the indictment, he falls within the meaning of "employer" as used in § 666(e), and that this interpretation of the statute does not violate defendant's right to due process.

The issue will present itself whether the court or the jury should decide if defendant's role in Quality Steel constitutes him an employer under § 666(e). The district court in *Pinkston–Hollar* stated that it is a jury question. The Seventh Circuit in *Doig* stated that the determination is one for the court. In my opinion the court must make an initial determination whether the government has provided sufficient evidence from which the jury could find beyond a

**52**

reasonable doubt that defendant's role was such that he was an employer. Ultimately, however, the matter is a question of fact, the resolution of which may require deciding subsidiary factual questions about defendant's role in the corporation. These questions, it seems to me, are for the jury to decide.

It is unnecessary to decide whether defendant can be charged and convicted as an aider and abettor under 18 U.S.C. § 2. Since I am following *Doig* and *Shear*, defendant cannot be convicted of aiding and abetting unless he is an employer. If he is an employer, he can be charged as a principal and there is no need to pursue the aiding and abetting charge. Thus it seems likely that § 2 will play no further role in this case.

I shall file an order denying defendant's motion to dismiss the indictment.